UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

                                        **MEMORANDUM & ORDER**
                                        **23-CR-186 (NGG)**

                -against-

JOHN MONTANEZ,

                           Defendant.

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Defendant John Montanez's motion *in limine*, (Def. Mot. (Dkt. 35)), and the Government's motion *in limine*, (Gov't Mot. (Dkt. 36).) For the reasons that follow, Montanez's Motion is GRANTED in part and DENIED in part, and the Government's Motion is GRANTED in part and DENIED in part.

## I.   BACKGROUND[1]

The court presumes the parties' familiarity with the underlying facts and procedural history of the case. In brief, on February 17, 2022, United Parcel Service ("UPS") personnel intercepted a suspicious package addressed to "Lily Gonzalez, Fl 2, 731 New Jersey Avenue, Brooklyn, NY 11207-7011." *Montanez*, 2024 WL 3360534, at *1. Upon inspection, UPS determined that the package contained firearm components: two completed lower receivers, two slides, and two magazines. *Id.* UPS then contacted the New York City Police Department ("NYPD"). *Id.*

NYPD Detective Jose Castano took possession of the package and was able to assemble the gun parts to create "operable firearms."

---

[1] The following facts are drawn from the court's July 10, 2024 Memorandum and Order denying Montanez's motions to dismiss the Indictment and to suppress physical evidence and his post-arrest statements. *See United States v. Montanez*, No. 23-CR-186 (NGG), 2024 WL 3360534 (E.D.N.Y. July 10, 2024).

(Application for Warrant (Dkt. 35-1) at 1.) Detective Castano searched for the intended recipient and address in a law enforcement database and found no connection between Lily Gonzalez and 731 New Jersey Avenue; the search indicated that Montanez had lived at the address since February 2020. *Montanez*, 2024 WL 3360534, at *1. Detective Castano then determined that Montanez was convicted of manslaughter in New York in 2007 and that he was on parole until December 2022. *Id.* (Def. Mot. at 7 (noting January 2007 conviction date).)

The following day, on February 18, 2022, the NYPD and the Kings County District Attorney's Office applied for, and were granted, an anticipatory no-knock search warrant for Montanez's apartment. *Montanez*, 2024 WL 3360534, at *1. The application to search Montanez's apartment was granted on the condition that: "an individual (who appears to be over the age of 18) who states that he or she is the intended recipient [of] the subject package or the rightful owner thereof" then "enter[s] into the subject location after acceptance of the package." *Id.*

On the morning of February 21, 2022, Detective Castano posed as a UPS delivery person, rang the doorbell to the apartment at 731 New Jersey Avenue, and said that he had a package. *Id.* at *2. Montanez and Detective Castano dispute the facts of the delivery, in particular whether Detective Castano asked Montanez if Lily Gonzalez lived in the apartment and if Montanez was authorized and willing to accept the package on her behalf. *Id.* But the parties do not dispute that Montanez took the package and returned to his apartment. *Id.* Shortly thereafter, law enforcement searched Montanez's apartment, finding the firearm components and a single Hornady .357 caliber cartridge. *Id.*

Later that afternoon, Special Agent Joshua Urban and Detective Rob Negron conducted a post-arrest interview of Montanez. *Id.* After obtaining a waiver of his *Miranda* rights, the agents questioned Montanez regarding his understanding of the package's

contents and his knowledge of prior deliveries to his residence. *Id.* When asked about the package that led to the issuance of the search warrant, Montanez told the agents that he was expecting a package from a "weed company." (Post-Arrest Interview Tr. (Dkt. 35-2) at 5-6.)

On April 26, 2023, a grand jury in the Eastern District of New York indicted Montanez on one count of possession of ammunition while knowing he had previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (Indictment (Dkt. 1) at 1.)

In March and April of 2024, Montanez moved to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b)(1) and to suppress the physical evidence and his post-arrest statements. (Mot. to Suppress Physical Evid. & Mot. to Dismiss ("First Mot.") (Dkt. 20-1); Mot. to Suppress Statements ("Second Mot.") (Dkt. 25-1).) The court denied his motions in full. *Montanez*, 2024 WL 3360534, at *8. Thereafter, the court set a trial date of November 4, 2024. (Minute Entry Dated 9/12/2024.)

Currently before the court are the parties' respective motions *in limine*. Montanez requests that the court: (1) preclude the Government from admitting evidence of Montanez's alleged purchase and receipt of the gun parts pursuant to Federal Rules of Evidence 404(b) and 403; (2) preclude the Government from introducing any post-arrest statements allegedly made by Montanez; (3) limit the Government's use of the phrase "felon" or "convicted felon" at trial; (4) preclude the Government from cross-examining Montanez about any prior convictions in the event he elects to testify; (5) preclude the Government from introducing evidence that it did not disclose before September 24, 2024; and (6) permit attorney-conducted *voir dire*. (Def. Mot. at 1-2.) The Government requests that the court: (1) admit evidence of Montanez's alleged purchase and receipt of the gun parts; (2) preclude Montanez from presenting arguments related to the legality of the search of his apartment and seizure of items

therefrom; (3) preclude Montanez from introducing evidence of his prior self-serving statements (but permit the Government to introduce those statements on the ground that they were falsely exculpatory); and (4) preclude Montanez from mentioning at trial any consequences attendant to conviction. (Gov't Mot. at 1; Gov't Opp. (Dkt. 38) at 9.)[2]

## II.  LEGAL STANDARD

The purpose of motions *in limine* is "to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[3] "A court will exclude evidence on a motion *in limine* only if it is clearly inadmissible on all potential grounds." *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021). The Federal Rules of Evidence govern the admissibility of evidence at trial.

"[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, No. 14-CV-858 (NGG) (PK), 2019 WL 1365752, at *2 (E.D.N.Y. Mar. 26, 2019). At trial, the court may also exercise discretion "to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

---

[2] The Government's brief in opposition is not internally paginated. Thus, citations to the Government's opposition refer to the ECF page number.

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

## III. DISCUSSION

### A. Evidence of the Gun Parts / Prior "Bad Acts"

The Government seeks to introduce, and Montanez seeks to preclude, evidence concerning the package containing "ghost gun" parts, the discovery of which led to the issuance of the search warrant in this case and the seizure of the cartridge that forms the basis of the possession of ammunition charge. (Def. Mot. at 4; Gov't Mot. at 3.)

The Government seeks to admit evidence of Montanez's alleged purchase and receipt of the gun parts under two theories. First, the Government claims that it constitutes direct evidence of the crime charged because the gun parts evidence is "is inextricably interwoven in the narrative of this case," providing "crucial context to the defendant's arrest and how law enforcement came to discover that the defendant was in possession of ammunition." (Gov't Mot. at 6-7.) Second, the Government contends that the proffered evidence is alternatively admissible under Federal Rule of Evidence 404(b) because it "is necessary to complete the story of the crime charged and bears on the issues of motive, intent, and identity." (*Id.* at 8-9 ("[T]he defendant's purchase and receipt of the ghost-gun parts is probative of his motive to possess ammunition that he could use in connection with a ghost gun.").)

Montanez argues that the gun parts evidence is inadmissible under Rules 404(b) and 403. (Def. Mot. at 4.) He contends that introduction of this evidence "would run afoul of Rule 404(b) because its only use would be to suggest to the jury that it is characteristic of Mr. Montanez to possess firearms." (*Id.* at 4-5.) Though he admits that the "only material issue in dispute is whether . . . Mr. Montanez possessed a single .357 caliber cartridge," Montanez asserts that the "particulars surrounding the purchase, delivery, and receipt of unrelated ghost gun parts make it no more or less likely that the cartridge was possessed by Mr.

Montanez." (Def. Opp. (Dkt. 37) at 2.) Moreover, because Montanez accepted the package without knowledge of its contents, "introduction of evidence about the package would risk confusing and misleading the jury, in violation of Rule 403." (Def. Mot. at 5.) In support of these arguments, Montanez emphasizes discovery documents which purportedly show that the ghost guns were designed to fire 9mm cartridges, while the ammunition discovered at Montanez's apartment was a .357 caliber cartridge. (*Id.* at 5 n.5; Def. Opp. at 3.)

As to the Government's argument that the gun parts evidence constitutes direct evidence of the crime charged, Montanez asserts that this evidence is "wholly unnecessary" to explain how law enforcement came to be in Montanez's apartment. (Def. Opp. at 2.) He contends that the Government "will be able to establish through witness testimony that law enforcement searched Mr. Montanez's apartment while executing a judicially authorized search warrant, [and] Mr. Montanez will not argue that the search was in any way illegal." (Def. Reply (Dkt. 39) at 2.) Additionally, Montanez argues that "the purchase and receipt of the ghost guns [does not] stem from the charged crime—possession of an unrelated cartridge." (Def. Opp. at 2) Instead, admission of this evidence "would necessitate a diversionary trial within a trial, which Rule 403 prohibits." (*Id.*)

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). In other words, "evidence that a defendant committed crimes beyond those presented to the jury is not admissible to show that the defendant is a bad person who is therefore likely to be guilty of the crimes charged." *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012). However, such evidence "may be admissible for another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Courts in this Circuit "follow an inclusionary rule, allowing the admission of [other crimes, wrongs, or acts] evidence for *any* purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (emphasis added). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997).

However, evidence of uncharged criminal activity is *not* considered other crimes evidence under Rule 404(b) if it "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Id.* at 942. In such circumstances, the uncharged criminal activity is considered direct evidence of the crime charged. *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019). "[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

Here, it is not manifestly clear to the court that the gun parts evidence—including law enforcement's investigation into the suspicious package, the discovery of ghost gun parts, and the controlled delivery of the gun parts to Montanez—constitutes "intrinsic proof" of the crime charged: possession of ammunition. *Id.* Although the evidence is "certainly relevant to show the background of the charged [offense], it does not appear to be

inexorably intertwined" with the charged offense. *United States v. Townsend*, No. 6-CR-34 (JFK), 2007 WL 1288597, at *2 (S.D.N.Y. May 1, 2007) (concluding that evidence relating to prior handgun and narcotics transactions was not inextricably intertwined with the defendant's participation in the charged narcotics conspiracy). In other words, the Government has not shown how the charged offense—possession of ammunition— "necessarily stem[s] from or [is] part and parcel of" Montanez's alleged purchase and receipt of the gun parts. *Id.* For that reason, the court declines to admit the gun parts evidence as direct evidence of the crime charged.

However, the gun parts evidence is admissible under Federal Rule of Evidence 404(b)(2) to prove Montanez's motive, intent, identity, knowledge, or absence of mistake in possessing the ammunition. As noted by Montanez, "[t]he only material issue in dispute is whether, as the government alleges, Mr. Montanez possessed a single .357 caliber cartridge." (Def. Opp. at 2; Def. Mot. at 5 (noting that trial will boil down to "a relatively simple, straightforward [question]—did Mr. Montanez knowingly possess the single cartridge allegedly found in his apartment[?]").) Other act evidence "may be properly admitted for the non-propensity purpose of demonstrating a defendant's access to and knowledge of firearms." *United States v. Bumagin*, 136 F. Supp. 3d 361, 370 (E.D.N.Y. 2015). Prior gun possession "is directly relevant to the issue of opportunity and absence of mistake and also admissible to demonstrate a defendant's ability to access such a weapon" or ammunition. *Id.* (admitting the defendant's statements to a confidential witness in possession of ammunition and firearm case wherein he discussed accepting a firearm, providing a firearm to another, and disposing of firearms because the statements demonstrated his ability to obtain firearms, his knowledge of firearms, opportunity, and absence of mistake). To the extent Montanez intends to argue at trial that it was not he who possessed the cartridge, that he had no motive or intent to

do so, or that the cartridge ended up in his apartment by mistake, the gun parts evidence tends to refute those contentions. Contrary to Montanez's assertion, the particulars surrounding his alleged purchase and receipt of ghost gun parts make it more likely that he knowingly possessed the cartridge seized from his apartment. *Gonzalez*, 110 F.3d at 941 ("To be relevant, evidence need only tend to prove the government's case.").

Moreover, it is of no consequence to the question of *admissibility* whether the ghost guns and seized cartridge are of different calibers. That Montanez allegedly purchased and received guns—of any kind—tends to prove his motive, intent, knowledge, or lack of mistake to possession of ammunition of any kind. Under the Second Circuit's inclusionary Rule 404(b) standard, no more is required. *Carboni*, 204 F.3d at 44.

Nevertheless, Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403. Montanez argues that introduction of the gun parts evidence would risk confusing and misleading the jury because he "accepted the package without knowledge of its contents," and would lead to a "trial within a trial" on the issue of the ghost gun parts. (Def. Mot. at 5; Def. Opp. at 2.) The Government argues that Montanez knew exactly what was in the package, and that it will introduce evidence showing, among other things, "the identity of the shipper (Co- Conspirator 1), evidence that the defendant and Co-Conspirator 1 exchanged messages concerning the purchase of ghost-gun parts before the delivery, and evidence that the defendant paid Co-Conspirator 1 for the ghost-gun parts via Cash App." (Gov't Opp. at 8.)

The court concludes that the probative value of the gun parts evidence is not substantially outweighed by a danger of confusing the issues, misleading the jury, undue delay, or wasting time.

Whether Montanez accepted the package without knowledge of its contents is an issue of fact for the jury to decide based on the evidence presented. Any risk that the jury may interpret the gun parts evidence as demonstrating Montanez's propensity to engage in criminal behavior can be mitigated by appropriate jury instructions. The court appreciates the risk of a "trial within a trial" on the gun parts issue, especially considering the amount of evidence the Government is apparently prepared to present on that point. (*See* Gov't Opp. at 8.) However, the danger of wasting time on this issue does not substantially outweigh the probative value of this evidence to the issues of motive, intent, identity, knowledge, and lack of mistake. Moreover, the court is prepared to take action in the event that the Government's presentation of the gun parts evidence begins to subsume the trial on the possession of ammunition charge.

For the above reasons, Montanez's motion to preclude the gun parts evidence is DENIED, the Government's motion to admit the gun parts evidence as direct evidence of the crime charged is DENIED, and the Government's motion to admit the gun parts evidence pursuant to Federal Rule of Evidence 404(b)(2) to establish motive, intent, identity, or absence of mistake is GRANTED.

### B. Arguments Regarding the Legality of the Search and Adequacy of the Investigation

The Government seeks to preclude Montanez "from arguing that the search of his apartment and seizure of items therein was unlawful or otherwise improper." (Gov't Mot. at 9-10.) Montanez represents that he "does not intend to make arguments about the legality of the underlying search." (Def. Opp. at 4.) However, Montanez argues that the "*circumstances* that led to the search are material to [his] defense." (*Id.* (emphasis in original).) Montanez contends that, should the court admit the gun parts evidence, the "adequacy of law enforcement's investigation is

highly relevant to whether the government can establish Mr. Montanez's knowing receipt and possession of the ghost guns." (*Id.* at 4-5.) Montanez further adds that "the lack of investigation prior to and during the execution of the search warrant is likewise relevant to [his] defense." (*Id.* at 5.) The Government counters that arguments regarding the adequacy of law enforcement's investigation are "foreclosed by the Second Circuit." (Gov't Reply (Dkt. 40) at 4.)

The jury's responsibility is to determine the guilt or innocence of Montanez based "on the evidence or lack of evidence that had been presented." *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000). "[T]he failure to utilize some particular [investigative] technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." *Id.* at 53. Put differently, the way in which the Government conducted its investigation is not relevant to the Government's burden of proof at trial. *United States v. Chang*, No. 18-CR-681 (NGG) (CLP), 2024 WL 3567006, at *3 (E.D.N.Y. July 29, 2024) ("[T]he Government is not on trial in this case, and the jury will not be asked to determine the adequacy of the Government's investigation."). "If the Government's investigation was insufficient such that its evidence falls short of proving defendant's guilt beyond a reasonable doubt, the jury will acquit." *United States v. Carton*, No. 17-CR-680 (CM), 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018).

While Montanez "may point to any asserted failure of proof in the record, any argument that the government has failed to carry its burden of proof because it conducted its investigation in a particular way is not relevant." *United States v. Duncan*, No. 18-CR-289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019); *see also Chang*, 2024 WL 3567006, at *3 ("Should the Defense attempt to challenge the adequacy of the Government's investigation through Government or law enforcement witnesses, it will

be precluded from doing so."). Thus, the Government's motion to preclude Montanez from making any arguments regarding the legality of the search or the adequacy of the investigation is GRANTED.

### C. Montanez's Post-Arrest Statements

Montanez seeks to preclude the Government from introducing any of his post-arrest statements on the ground that the statements "were entirely exculpatory" and thus "irrelevant and inadmissible" pursuant to Federal Rules of Evidence 401 and 402. (Def. Mot. at 5.) Montanez further asserts that the statements should be excluded under Rule 403 because he admitted to ordering "weed bags," which "some jurors may deem immoral and illegal." (*Id.* at 6.)

The Government requests that the court preclude Montanez "from seeking to introduce his own statements in the form of post-arrest statements, or from seeking to elicit from government witnesses any false exculpatory statements he made following his arrest," on the ground that those statements are inadmissible hearsay.[4] (Gov't Mot. at 11.) At the same time, the Government argues that *it* may introduce Montanez's post-arrest statements because they were falsely exculpatory and therefore constitute "circumstantial evidence of consciousness of guilt." (Gov't Opp. at 9 ("[T]he government will introduce evidence at trial showing that the defendant's statements were falsely exculpatory.").) The Government does not identify any specific statements it intends to introduce. Montanez asserts that his statements were genuinely exculpatory and are thus inadmissible. (Def. Reply at 4.)

---

[4] Montanez apparently agrees with the Government that he may not introduce his own post-arrest statements. (Def. Opp at 5 ("The government has moved to preclude Mr. Montanez from introducing his prior exculpatory statements. . . . The defense agrees that this evidence is inadmissible.").)

On this issue, the parties appear to confuse admissibility with weight. As evidenced by the parties' briefs, there is an issue of fact as to whether certain of Montanez's post-arrest statements were genuinely or falsely exculpatory. (Def. Mot. at 5; Gov't Mot. at 11; Gov't Opp. at 9; Def. Reply at 4.) The cases cited by the parties on this issue all relate to the *sufficiency of the evidence,* not the admissibility of the statements at issue. *United States v. Glenn,* 312 F.3d 58, 69 (2d Cir. 2002) (assessing sufficiency of the evidence and noting that "false exculpatory statements to law enforcement officials may be circumstantial evidence of consciousness of guilt" but "do not alone prove guilt"); *United States v. Samaria,* 239 F.3d 228, 236 (2d Cir. 2001) (same); *United States v. Johnson,* 513 F.2d 819, 824 (2d Cir. 1975) (same); *United States v. Di Stefano,* 555 F.2d 1094, 1104 (2d Cir. 1977) (reviewing trial court's jury instructions and noting that "[f]alse exculpatory statements are not admissible as evidence of guilt, but rather as evidence of consciousness of guilt"). The only case addressing admissibility is an out-of-circuit case that discusses whether a defendant's statements were falsely exculpatory so as to be admissible under Rule 404(b), an argument not raised by either party here. *See United States v. Berrios,* 676 F.3d 118, 130-31 (3d Cir. 2012). At least in this case, whether Montanez's post-arrest statements were falsely exculpatory goes to the weight, not the admissibility of the evidence. The court turns to the question of admissibility now.

Hearsay is an out-of-court statement offered for the truth of the matter asserted and is inadmissible unless the Federal Rules of Evidence, a federal statute, or the Supreme Court provide otherwise. Fed. R. Evid. 801, 802. Rule 801(d)(2) provides that an opposing party's statement, offered against them, is not hearsay. *See* Fed. R. Evid. 801(d)(2). As both Montanez and the Government recognize, "[a] defendant may not introduce his own prior out-of-court statements because they are hearsay, and not admissible." *United States v. Kadir,* 718 F.3d 115, 124 (2d Cir. 2013);

*United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (The defendant's "own self-serving statements, . . . as offered by him, are inadmissible hearsay."); *United States v. Saliba*, No. 8-CR-792 (DLI) (RLM), 2010 WL 1189350, at *4 (E.D.N.Y. Mar. 26, 2010) (acknowledging that the "defendant clearly may not introduce his prior out-of-court statements pursuant to [Rule 801(d)(2)]."). Thus, Montanez may not introduce his own post-arrest statements.

"When the government offers in evidence the post-arrest statement of a defendant[,] it commonly does so for either of two reasons": to establish the truth of the matter asserted, or "to show that the defendant made false representations to the authorities, from which the jury could infer a consciousness of guilt." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). In the first circumstance, under Rule 801(d)(2)(A), "the statement is not hearsay[] because it is simply a statement of the opposing party." *Id.* In the second circumstance, "the statement obviously is not offered for the truth of the matter asserted, and therefore is non-hearsay under Rule 801(c), as well as non-hearsay under Rule 801(d)(2)(A) as the statement of an opposing party."[5] *Id.* In either circumstance, the statement is admissible.

Although the Government has not affirmatively requested such a ruling, the court anticipates that it will admit Montanez's post-arrest statements as offered by the Government, whether for the truth of the matter asserted or to demonstrate a consciousness of guilt; subject to a Rule 403 objection by the Defense. Whether Montanez's statements were genuinely or falsely exculpatory is an issue of fact for the jury to decide and weigh as they see fit.

---

[5] Rule 801(c) defines "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence *to prove the truth of the matter asserted* in the statement." Fed. R. Evid. 801(c) (emphasis added).

For the foregoing reasons, Montanez's motion to preclude the Government from introducing his post-arrest statements is DE-NIED, and the Government's motion to preclude Montanez from introducing or eliciting his post-arrest statements is DENIED as moot. (*See* Def. Opp. at 5 (agreeing with the Government that Montanez may not introduce his own post-arrest statements).) Because the Government has not identified the statements it seeks to introduce, the court's ruling on the admissibility of Montanez's statements—including any objections Montanez may raise under Rule 403—is DEFERRED until the appropriate time.

### D. Request to Exclude the Phrase "Felon" or "Convicted Felon"

Montanez requests that the court preclude the Government and Government witnesses from referring to him as a "convicted felon" or "felon" at trial. (Def. Mot. at 6.) He points out that these phrases do not appear in the statutory language of the charged offense, Section 922(g)(1), and that the phrase "convicted felon" carries "a powerfully negative connotation . . . that can be highly stigmatizing for individuals." (*Id.*) Montanez asks the court to require the Government and its witnesses to use language that more closely tracks the statutory language, such as "previously was convicted of an offense punishable by more than a year." (*Id.*) For support, defense counsel points to *United States v. Belk*, 346 F.3d 305 (2d Cir. 2003), in which the Second Circuit commended a district court that prevented the Government from using the term "convicted felon." (*Id.* at 6-7.)

The Government opposes this request. (Gov't Opp. at 9.) It argues that *Belk* did not establish a rule precluding the use of the phrase "convicted felon" in every case. (*Id.* at 10-11.) Moreover, the Government asserts that "convicted felon" is a convenient shorthand for the prior conviction element of Section 922(g)(1). (*Id.* at 10.)

At the outset, the court notes that this issue comprises two distinct sub-issues: whether certain phrases are appropriate shorthand for the prior felony conviction element of a Section 922(g)(1) offense, and whether certain phrases are an appropriate manner of referring to the defendant in general. Courts adopt varying approaches to these issues. Some completely prohibit the Government from characterizing the defendant as a "felon." *See, e.g.*, *United States v. Belk*, No. 1-CR-180 (LTS), 2002 WL 237837, at *4 (S.D.N.Y. Feb. 19, 2002), *aff'd* 346 F.3d 305 (2d Cir. 2003); *United States v. Scott*, No. 21-CR-429 (AT), 2022 WL 1026725, at *3 (S.D.N.Y. Apr. 5, 2022) (granting the defendant's motion to preclude the Government from using the terms "felon" or "convicted felon," but denying his motion to preclude the Government from using the term "felony"). Others refuse to impose such a blanket prohibition. *See, e.g.*, *United States v. White*, 312 F. Supp. 3d 350, 354 (E.D.N.Y. 2018) (denying the defendant's motion to preclude the Government from referring to him as a "convicted felon" but stating that it would "closely monitor" the Government's use of such terms); *United States v. Wagner*, No. 20-CR-410 (NSR), 2022 WL 19179, at *7 (S.D.N.Y. Jan. 3, 2022) (same).

In 2009, this court refused to impose a blanket prohibition on the use of the phrase "convicted felon" in reference to a defendant charged with a violation of Section 922(g)(1). *United States v. White*, No. 8-CR-682 (NGG), 2009 WL 4730234, at *2 (E.D.N.Y. Dec. 4, 2009). The court explained that the phrase "is a convenient shorthand for the prior-conviction element of the statutory offense charged, and it is commonly used when referring to that element of the crime." *Id.* Although the court recognized that the "repeated use of a label can be prejudicial in certain circumstances," it ultimately concluded that it "would be unduly burdensome to require the Government to steer completely clear of the phrase," and, in any event, the Government represented that it would not "overuse the phrase." *Id.*

As to the first sub-issue, the court will permit the Government to use certain shorthand language in discussing the prior felony conviction element of Section 922(g)(1). Stating that Montanez was "convicted of a felony" is a much simpler way of explaining that he is a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). But referring to Montanez directly as a "felon" or "convicted felon" raises concerns of potential prejudice, "because these terms characterize him as a person rather than merely labeling his prior conduct." *Scott*, 2022 WL 1026725, at *3; *United States v. Clanton*, No. 23-CR-328 (KAM), 2024 WL 1072050, at *16 (E.D.N.Y. Mar. 12, 2024) (agreeing with the defendant that the term "convicted felon" should not be used to describe him). Since the court's decision in *White* nearly 15 years ago, much scholarship and dialogue have emerged regarding the prejudicial impact of defining individuals by their crimes and punishments, rather than by their status as human beings.[6] In this context, labeling Montanez as a "felon" or "convicted felon" does not simply describe his criminal history, but defines him as a person by the crime he previously committed.

---

[6] *See, e.g.*, Erica Bryant, *Words Matter: Don't Call People Felons, Convicts, or Inmates*, Vera Institute (Mar. 31, 2021), https://www.vera.org/news/words-matter-dont-call-people-felons-convicts-or-inmates [https://perma.cc/82EY-VE24]; Akiba Solomon, *What Words We Use — and Avoid — When Covering People and Incarceration*, The Marshall Project (Apr. 12, 2021), https://www.themarshallproject.org/2021/04/12/what-words-we-use-and-avoid-when-covering-people-and-incarceration [https://perma.cc/5WJE-NAYA]; Lawrence Bartley, *I Am Not Your 'Inmate'*, The Marshall Project (Apr. 12, 2021), https://www.themarshallproject.org/2021/04/12/i-am-not-your-inmate [https://perma.cc/5A4V-KBF5]; Person-First and Identity-First Language Glossary, New York State Office of Language Access (Jan. 2024), https://ogs.ny.gov/person-first-and-identity-first-language-glossary [https://perma.cc/R9VL-FRVZ] (discussing alternatives to "prisoner," "convict," and "inmate."); *Scott*, 2022 WL 1026725, at *3; *Clanton*, 2024 WL 1072050, at *16.

*Scott*, 2022 WL 1026725, at *3. Such labels, especially when repeated, invite the jury to draw negative inferences about Montanez's character and propensity to violate the law, and are no more convenient than simply stating that Montanez was previously "convicted of a felony." As such, the Government is free to adopt "convicted of a felony" or similar shorthand for purposes of discussing the prior felony conviction element of Section 922(g)(1), but it must refrain from characterizing Montanez as a "felon" or "convicted felon" at trial. *See Belk,* 346 F.3d at 311 (approving similar approach); *Scott,* 2022 WL 1026725, at *3 (adopting same approach).

As to the second sub-issue—whether "felon" or "convicted felon" are appropriate manners of referring to the Defendant in general—the court sees no legitimate reason for the Government to refer to Montanez using such terms. Montanez does not contest—and indeed is prepared to stipulate to—the fact of his prior felony conviction. (Def. Mot. at 6.) In other words, Montanez's status as a person who has been convicted of a felony is not at issue in this case. Moreover, in the context of the wider trial, "felon" and "convicted felon" are no more convenient shorthand for Montanez than "the Defendant" or "Mr. Montanez." *United States v. Miles,* No. 11-CR-581 (JFK), 2012 WL 4178274, at *7 (S.D.N.Y. Sept. 20, 2012) (granting the defendant's request to prevent the government from referring to him as a "felon" or "convicted felon" and advising the Government to instead refer to him as "Defendant," "Mr. Miles" or "Miles."). Thus, characterizing Montanez as a "convicted felon" or "felon" apparently serves no legitimate purpose, and threatens to prejudice Montanez. It is within the court's discretion to minimize such unnecessary prejudice at trial. *See United States ex rel. Nelson v. Follette,* 430 F.2d 1055, 1059 (2d Cir. 1970) ("A trial judge exercises broad discretion in controlling the conduct of trial and the presentation of evidence.").

Accordingly, Montanez's motion to preclude the Government and its witnesses from referring to Montanez as a "felon" or "convicted felon" at trial is GRANTED.

### E.    Evidence of Montanez's Prior Conviction

Montanez seeks to preclude evidence of his prior manslaughter conviction[7] pursuant to Federal Rule of Evidence 609(a)(1)(B), in the event he elects to testify at trial. (Def. Mot. at 7.) In January 2007, Montanez was convicted of manslaughter in violation of New York Penal Law Section 125.20(1), which provides that a person is guilty of manslaughter when, "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or a third person." (*Id.*); N.Y.P.L. § 125.20(1). Montanez was sentenced to 14 years of incarceration and was released on December 28, 2017. (Def. Mot. at 7.)

Montanez requests that the court "preclude the government from introducing evidence of this conviction and the underlying facts," should he testify at trial. (*Id.*) Although Montanez "will agree to concede by stipulation the fact of his prior felony conviction," he argues that "the jury requires no further information to assess his credibility." (*Id.* at 8.) Specifically, Montanez asserts that his manslaughter conviction has little impeachment value because "it does not involve untruthfulness as an element," and evidence of this conviction would be unduly prejudicial, as the jury may seek to punish him based on his prior conduct. (*Id.*)

The Government argues that the details of Montanez's prior felony conviction are admissible under Rule 609(a)(1)(B). (Gov't Opp. at 13.) Among other things, the Government contends that Montanez's prior conviction for manslaughter suggests his willingness to ignore the law, which bears on his truthfulness or untruthfulness. (*Id.*) Additionally, the Government points out

---

[7] According to defense counsel, this is Montanez's only prior felony conviction. (Def. Mot. at 7.)

that Montanez was on parole for his manslaughter conviction at the time of the instant alleged offense, that manslaughter and possession of ammunition are distinct offenses such that the jury would be unlikely to improperly infer propensity, and that credibility "will be a crucial issue" in this case, so the details of Montanez's prior conviction are especially important. (*Id.* at 13-14.)

Federal Rule of Evidence 609 sets forth certain rules and procedures for "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). As relevant here, the Rule provides:

> [F]or a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence [of the conviction] . . . must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant.

Fed. R. Evid. 609(a)(1)(B). The rule imposes certain additional limitations if more than 10 years have passed since the conviction or release from confinement, whichever is later; however, that provision does not apply here. *See* Fed. R. Evid. 609(b).

In determining whether the probative value of a felony conviction outweighs its prejudicial effect, district courts are guided by several factors, including:

> (1) the impeachment value of the prior crime; (2) the date of the conviction and the witness's subsequent history (the more recent, the more probative); (3) the similarity between the past crime and the charged crime (the more similar, the greater likelihood of prejudice); (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.

*United States v. White*, 312 F. Supp. 3d 355, 359 (E.D.N.Y. 2018) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)). The Government bears the burden of proving that the probative value of the prior conviction outweighs its prejudicial effect to the defendant. *Hayes*, 553 F.2d at 828. When evidence of a prior conviction is admitted, "inquiry into the essential facts of the conviction, including the nature or statutory name of [the] offense, its date, and the sentence imposed is presumptively required by the Rule," subject to a balancing of the probative value of the evidence against its potential prejudicial effect. *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005).

In applying Rule 609(a)(1), district courts must examine "which of a witness's crimes have elements relevant to veracity and honesty and which do not." *Id.* at 617. While Rule 609(a)(1) "presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," the probative nature of convictions that do not bear directly on honesty is a matter of degree. *Id.* ("We believe that felonies not involving dishonesty or false statement such as to fall within the scope of Rule 609(a)(2) nonetheless bear on credibility to varying degrees."). Thus, the Second Circuit distinguishes between "crimes that reflect adversely on a person's integrity, and which therefore bear on honesty—such as those involving deceit, fraud, and theft—and acts of violence, which may result from a short temper, a combative nature, extreme provocation, or other causes, and generally have little or no direct bearing on honesty and veracity." *Id.* Crimes that fall outside the ambit of Rule 609(a)(2) but nonetheless rank "high on the scale of probative worth on credibility" include theft and escape crimes. *Id.* at 618. The gravity of an offense may also bear on truthfulness, "to the extent that more serious offenses indicate a stronger willingness to ignore the law." *Id.* Even violent crimes may bear on a witness's truthfulness if the offense "require[d] planning or preparation," because planning indicates deliberate violation of the law. *Id.* The "gradations

among Rule 609(a)(1) crimes" lie at the heart of the balancing the court must undertake when determining whether to admit evidence of a conviction under Rule 609(a)(1). *Id.* at 619.

The parties agree that Montanez's prior manslaughter conviction falls under Rule 609(a)(1)(B) because his conviction was punishable by imprisonment for more than one year and this is a criminal case in which the prospective witness is the defendant. Fed. R. Evid. 609(a)(1)(B). In such circumstances, district courts must admit evidence of the conviction if the probative value of the evidence outweighs its prejudicial effect to the defendant. *Id.*

The first factor considers the impeachment value of the prior conviction, *i.e.*, the extent to which the conviction is probative of the defendant's character for truthfulness. *White*, 312 F. Supp. 3d at 359. Here, Montanez's manslaughter conviction is minimally probative of his character for truthfulness. Manslaughter is not a crime that "reflect[s] adversely on a person's integrity, and which therefore bear[s] on honesty," such as fraud or theft. *Estrada*, 430 F.3d at 617. Rather, it is a violent offense "which may result from a short temper, a combative nature, extreme provocation, or other causes, and generally [has] little or no direct bearing on honesty and veracity." *Id.* Nor is there any evidence that the offense involved planning or preparation indicative of a deliberate violation of the law rather than impulse or anger. *Id.* at 618. While the Government is correct that "the gravity of an offense may bear on truthfulness," and manslaughter is certainly a very serious offense, there is no evidence that Montanez's prior conviction is "particularly heinous" such that it reflects a "rejection of social mores," including the necessity to tell the truth. *Id.* In short, Montanez's manslaughter conviction does not bear any "elements relevant to veracity," and is therefore minimally probative of his character for truthfulness. *Id.* at 617; *Hayes*, 553 F.3d at 828 (noting that a conviction for importation of cocaine

"has more probative value on credibility than, for example, a conviction for mere narcotics possession, or for a violent crime"). As such, the details of Montanez's conviction possess little impeachment value. *White*, 312 F. Supp. 3d at 359.

The second factor considers the date of the conviction and the defendant's subsequent history. *Id.* Montanez was convicted of manslaughter over 17 years ago, in January 2007, and was released from prison nearly 7 years ago, in December 2017. (Def. Mot. at 7.) Other than the current charge, Montanez has committed no other felony offenses since his release from prison. (*Id.*) Although Rule 609(a)(1) applies when less than 10 years have elapsed since the later of the defendant's conviction or release from confinement, Montanez's manslaughter conviction is by no means "recent." *White*, 312 F. Supp. 3d at 359. Thus, the date of the conviction and Montanez's subsequent history further diminish the probative value of the evidence. *See Hayes*, 553 F.2d at 828 (concluding that probative value of conviction was increased where the conviction occurred two months before trial and *after* the charged offenses at issue).

The third factor considers the similarity between the past crime and the crime charged. *White*, 312 F. Supp. 3d at 359. The more similar the crimes, the greater the likelihood of prejudice to the defendant. *Id.* Here, manslaughter and possession of ammunition are distinct offenses, such that there is little risk of the prejudice "that inevitably results from the introduction of a conviction for the same crime as that for which [the defendant] is on trial." *Hayes*, 553 F.2d at 828. Therefore, this factor weighs in favor of admissibility.

The fourth and fifth factors require the court to weigh the importance of the defendant's testimony and the centrality of the defendant's credibility. *White*, 312 F. Supp. 3d at 359. These two factors "point in opposite directions." *United States v. Elias*, No. 18-CR-33 (NGG), 2022 WL 715486, at *6 (E.D.N.Y. Mar. 10,

2022). As to the fourth factor, "the *more* important the defendant's testimony relative to other evidence—in the sense that, without it, the defense's story has little other means of being advanced—the *less* willing a court should be to admit evidence of a prior conviction." *Id.*; *see also Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) (recognizing that a judge "may . . . conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment."). As to the fifth factor, "the *more* important the defendant's credibility, the *more* willing a court should be to admit a prior conviction." *Elias*, 2022 WL 715486, at *6 (emphases added).

In this case, the critical issue is whether Montanez knowingly possessed the cartridge. *See generally Rehaif v. United States*, 588 U.S. 225, 230 (2019) (listing elements of a Section 922(g) offense). Montanez's testimony, should he choose to give it, would be of great importance in providing his version of the case. Without his testimony, "the defense's story has little other means of being advanced." *Elias*, 2022 WL 715486, at *6. At the same time, Montanez's credibility is of central importance—the jury will have to decide whether to believe his or the Government's account of the issue of knowing possession. Thus, the fourth factor weighs in favor of Montanez, and the fifth factor weighs in favor of the Government. However, it bears repeating that, even if credibility is a central issue in this case, Montanez's manslaughter conviction has little, if anything, to say about his character for truthfulness. In other words, Montanez's conviction for a violent offense more than 17 years ago has little bearing on the issue of his credibility.

The Rule 609(a)(1) factors "are not meant to be simply totted up, with points given to each side." *Elias*, 2022 WL 715486, at *7. Rather, the factors must be considered together in light of

Rule 609(a)(1)'s overall purpose of "providing the jury with information that may be helpful in evaluating the credibility of witnesses without unduly risking conviction based on evidence of bad character." *United States v. Pitera*, 795 F. Supp. 571, 576 (E.D.N.Y. 1992). Considering the factors together, the court concludes that the probative value of the manslaughter conviction does not outweigh its prejudicial effect to Montanez. As discussed above, Montanez's manslaughter conviction is minimally probative of his character for truthfulness, especially because it occurred over 17 years ago. At the same time, the danger of prejudice to Montanez is great. Manslaughter is a serious, violent offense likely to evoke strong emotions and opinions in the jury. There is a substantial risk that the jury may seek to punish Montanez for his prior conduct or deem him guilty for the instant offense based on perceived evidence of bad character. Because the minimal probative value of the manslaughter conviction does not outweigh its prejudicial effect to Montanez, Montanez's request to preclude the Government from impeaching him with his prior conviction in the event he elects to testify is GRANTED.

Of course, the *fact* of Montanez's prior felony conviction is an essential element of the Section 922(g)(1) charge. *See United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993). Thus, the court must—and will—admit proof of the fact of his conviction for the purpose of proving that element of Section 922(g)(1). However, while the *fact* of a prior felony conviction is an essential element of Section 922(g)(1), the "*underlying facts* of the prior conviction . . . are completely irrelevant." *Id.* at 103. "The jury has no need to know the nature of the prior conviction; all that it needs to know is that there was a prior conviction sufficient to sustain that element of the crime." *Id.* The Supreme Court summarized the issue in *Old Chief*:

> Congress, however, has made it plain that distinctions among generic felonies do not count for [Section

922(g)(1)] purpose[s]; the fact of the qualifying convic-
tion is alone what matters under the statute. A
defendant falls within the category simply by virtue of
past conviction for any qualifying crime ranging from
possession of short lobsters to the most aggravated mur-
der. The most the jury needs to know is that the
conviction admitted by the defendant falls within the
class of crimes that Congress thought should bar a con-
vict from possessing a gun, and this point may be made
readily in a defendant's admission and underscored in
the court's jury instructions.

*Old Chief v. United States*, 519 U.S. 172, 191-92 (1997).

As discussed above, Montanez represents that he "will stipulate
that he was previously convicted of a crime punishable by impris-
onment for a term exceeding one year, and that he knew this at
the time of this offense." (Def. Mot. at 6.) Although the Govern-
ment has yet to indicate its position on such a stipulation, when
the defendant offers to stipulate to the fact of his prior felony
conviction, and the prior conviction "is for an offense likely to
support conviction on some improper ground," it would be an
abuse of discretion for the court to reject the defendant's pro-
posed stipulation. *See Old Chief*, 519 U.S. at 191-92. Thus, the
parties are advised that, in the context of establishing the "prior
felony conviction" element of Section 922(g)(1), the court is pre-
pared to accept a proposed stipulation by Montanez, limiting the
prior conviction evidence to the information necessary to sustain
a conviction under Section 922(g)(1): that Montanez "has been
convicted [of] a crime punishable by imprisonment for a term

exceeding one year."[8] 18 U.S.C. § 922(g)(1); *see also Belk*, 346 F.3d at 311 (approving such an approach).

### F.  Request to Exclude "Belatedly Disclosed" Evidence

Montanez requests that the court preclude the Government from introducing evidence that it did not disclose before September 24, 2024.[9] (Def. Mot. at 8; Def. Reply at 8.) Specifically, on September 24, 2024, the Government disclosed for the first time a "voluminous" amount of data (58.8 GB) extracted from Montanez's cellphone. (Def. Mot. at 9.) Although police seized Montanez's cellphone over two years ago, the Government did not facilitate a full extraction of the phone's data until September 20, 2024. (Gov't Opp. at 14 n.2.) Montanez asserts that he has made multiple Rule 16 discovery requests, but the Government has offered no explanation for the delay in turning over the cellphone data and other "belatedly disclosed evidence." (Def. Mot. at 9; Def. Reply at 8.)

Montanez argues that preclusion is warranted pursuant to Federal Rule of Criminal Procedure 16(d)(2) because the Government belatedly disclosed the materials in violation of Rule 16(a)(1)(E). (Def. Mot. at 8-9 (erroneously citing Fed. R. Crim. P. 16(a)(1)(C)); Def. Reply at 8 (correctly citing Fed. R. Crim. P. 16(a)(1)(E)).) He argues that the "voluminous nature" of the cellphone data does not afford him adequate time to review the phone's contents before the November 4, 2024 trial date. (Def. Mot. at 10.) Montanez implies that the disclosure could prejudice

---

[8] Upon request, the court may also issue "a proper curative instruction explaining to the jury that it may only use proof of the prior conviction to satisfy the prior-conviction element of the crime." *Belk*, 346 F.3d at 311; *see also* Fed. R. Evid. 105.

[9] In a footnote, Montanez also references phone records, surveillance video, and video footage disclosed by the Government on September 19 and 20, 2024. (Def. Mot. at 9 n.10.) It is unclear whether Montanez also requests preclusion of this evidence.

his existing trial strategy, which was based in part on the *lack* of evidence linking him to the charged crime. (*Id.* at 9-10.) Montanez solely requests preclusion of the evidence, not a continuance, on the ground that a continuance would inappropriately interfere with his right to a speedy trial. (*Id.*)

The Government opposes this request. (Gov't Opp. at 14.) It points out that the "supplemental discovery productions were provided more than four weeks before trial, with one small supplemental discovery production made [on October 11, 2024]." (*Id.*) It asserts that these productions "were part of the government's ongoing and continuing effort to [disclose] any materials potentially covered by Rule 16, or other pre-trial disclosure rules," and were "provided to the defense sufficiently in advance for any possible use at trial." (*Id.*) As to the cellphone data specifically, the Government states that it "has conferred with defense counsel regarding the limited evidence from the defendant's cellphone that it intends to use at trial." (*Id.* at 16.) The Government intends to introduce "only" 512 pages of text messages between the defendant and others, including messages allegedly sent by Montanez wherein he expresses his desire to acquire a weapon and ammunition. (1/22/2022 Text Message Exchange (Dkt. 38-1) at 2-3.) The Government contends that these messages "are highly probative of the defendant's knowledge of and intent to possess ammunition," and were disclosed sufficiently in advance such that the court "should not exercise the severe remedy of precluding the government from using this evidence at trial." (Gov't Opp. at 16.)

Upon a defendant's request, the Government must:

> [P]ermit the defendant to inspect and to copy or photograph . . . documents, data, photographs, tangible objects, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing

the defense; (ii) the government intends to use the item
in its case-in-chief at trial; or (iii) the item was obtained
from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). If the Government violates this dis-
closure obligation, "a district court has broad discretion in
fashioning a remedy, including ordering the exclusion of evi-
dence." *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016);
*see* Fed. R. Crim. P. 16(d)(2). Ultimately, "Rule 16(d) is con-
cerned with the prejudice resulting from the government's
untimely disclosure of evidence, rather than with the prejudice
attributable to the evidence itself." *United States v. Sanchez*, 912
F.2d 18, 23 (2d Cir. 1990). As such, while a district court has
broad discretion in determining the appropriate remedy for a
Rule 16 violation, that discretion is guided by an examination of
"the reasons why disclosure was not made, the extent of the prej-
udice, if any, to the opposing party, the feasibility of rectifying
that prejudice by a continuance, and any other relevant circum-
stances." *Lee*, 834 F.3d at 159.

Here, exclusion of the evidence disclosed on or after September
24, 2024 is unwarranted. As noted by the Government, "[t]he
Second Circuit—even in cases where the government produces
significant amounts of discovery shortly before trial—has found
there is no Rule 16 violation so long as that evidence is promptly
produced to defense counsel and there is sufficient time to review
the materials." *United States v. Steiner*, No. 19-CR-295 (HG),
2022 WL 2390943, at *2 (E.D.N.Y. July 1, 2022); *Lee*, 834 F.3d
at 159-61 (no abuse of discretion where court declined to ex-
clude the defendant's statements disclosed in the middle of trial);
*Sanchez*, 912 F.2d at 23 (no abuse of discretion where court de-
clined to exclude evidence disclosed five days before trial).
Although the Government was in possession of Montanez's cell-
phone for a number of years, it disclosed the cellphone data to
defense counsel within days of the data extraction, and conferred

with counsel regarding the specific evidence that it intends to introduce at trial. (Gov't Opp. at 14 n.2, 16.) Because the Government's productions were sufficiently prompt and provided defense counsel with adequate time to review the materials, the Government did not violate Rule 16 in its latest disclosures.

Even if the Government had violated Rule 16, the relief Montanez seeks is inappropriate. While Montanez rejects the idea of a continuance, he "nowhere suggests that the extra time afforded by [a] continuance [would be] insufficient to review the new discovery." *Steiner*, 2022 WL 2390943, at *2. And "[w]here the issue is late disclosure, a continuance is sufficient to cure any prejudice, even if a Rule 16 violation occurred." *Id.* Moreover, any prejudice Montanez may have suffered from the late disclosure of the cellphone evidence is significantly ameliorated by the Government's identification of the specific cellphone evidence it intends to introduce at trial. (Gov't Opp. at 16.) Thus, the court concludes that no discovery-related remedy, and certainly not the more drastic remedy of precluding the new evidence, is necessary at this time. For that reason, Montanez's motion to preclude the Government from introducing evidence that it did not disclose before September 24, 2024 is DENIED.

## G. Attorney-Conducted *Voir Dire*

Montanez asks the court to permit attorney-conducted *voir dire* of prospective jurors, arguing that a thorough and adequate *voir dire* is an essential part of his right to an impartial jury. (Def. Mot. at 10.) The Government opposes this request, pointing out that attorney-conducted *voir dire* is not the norm in this District, and asserting that "[t]here is no reason to believe that counsel will be better than the [c]ourt at identifying [juror] bias." (Gov't Mot. at 18-19.)

"It is uncontroversial that part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *United States v. Mensah*, 110 F.4th 510, 525 (2d Cir. 2024); *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled"). To that end, Federal Rule of Criminal Procedure 24(a)(1) provides that "[t]he court may examine prospective jurors *or* may permit the attorneys for the parties to do so." Fed. R. Crim. P. 24(a)(1) (emphasis added). The court "is afforded broad discretion in the way it conducts *voir dire*." *Mensah*, 110 F.4th at 525.

"Court and counsel have somewhat different goals in *voir dire*." *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002). While the court "wants a fair and impartial jury to be chosen and to move expeditiously to the presentation of evidence," counsel desires "a jury favorable to their cause—fair or not." *Id.* Counsel may have "an additional purpose in voir dire," namely, "exposing jurors to various arguments they intend to make at trial." *Id.* These observations are not aspersions on counsel, but an acknowledgement of the fact that counsel is ultimately tasked with advancing the best interests of their client. As such, the general view among judges in this Circuit is that "examination by the court is the preferable practice and . . . results in great savings of time and improves the character of the examination." *United States v. Aguilar*, No. 20-CR-390 (ENV) (JAM), 2023 WL 8722466, at *1 (E.D.N.Y. Dec. 19, 2023) (collecting cases); *United States v. Taveras*, 436 F. Supp. 2d 493, 504 (E.D.N.Y. 2006) ("The general practice in this district is for the judge to ask all the questions or to supplement those posed in a written questionnaire."), *aff'd in part, vacated in part on other grounds sub nom. United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008).

Montanez does not argue persuasively that attorney-conducted *voir dire* is necessary. He cites to a Fifth Circuit case where the court noted that the "practice of almost exclusive voir dire examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strengths and weaknesses of the case," and, as such, "questioning by counsel would be more likely to fulfill the need [of a thorough *voir dire*] than an exclusive examination [by the court]." (Def. Mot. at 11 (quoting *United States v. Ible*, 630 F.2d 389, 395 (5th Cir. 1980)).) Montanez also relies on certain articles suggesting "that jurors are less likely to be fully candid and complete when responding to questions from a judge as opposed to those from an attorney." (*Id.* at 11 n.11, 12 n.12 (citing law journal articles from 1981, 1965, and 1987); Def. Reply at 8-9.) Finally, Montanez asserts that attorney-conducted *voir dire* is especially necessary in this case given "community members' strongly held beliefs for or against firearm and ammunition possession," and considering that mass shootings and gun possession are "hot button issue[s]" in the United States. (Def. Mot. at 12.)

The court is not persuaded, much less bound by, the authorities cited by Montanez. Even accepting that lawyers "almost always know the case better than the trial judge and are in a better position to determine how explicit and implicit biases among potential jurors might affect the outcome," that does not mean that lawyers are in the best position to select an *impartial* jury. (Def. Reply at 9.) As noted above, an attorney's purpose in conducting *voir dire* is to select a jury "favorable to their cause—fair or not." *Lawes*, 292 F.3d at 128. Counsel remains free to impart their greater knowledge of the case on the judge in the form of proposed questions to prospective jurors. But this District's longstanding practice of disallowing attorney-conducted voir dire reflects the experience that judges, not attorneys, are in the best position to select an impartial jury.

32

Additionally, the court is skeptical of the proposition that lawyers "have greater access to resources to develop *voir dire* strategies to address both explicit and implicit biases of prospective jurors." (Def. Reply at 9.) The jury in this case will be selected by a federal judge with experience and knowledge in rooting out the explicit and implicit biases of prospective jurors. Montanez simply provides no reason to doubt the ability of the court to carry out its duty to empanel an impartial jury.

Montanez also points to empirical evidence purportedly demonstrating that jurors respond more candidly to questions asked by attorneys and are more likely to give judges the answers they believe will be viewed as socially acceptable. (Def. Mot. at 12 n.12; Def. Reply at 9.) Once again, the court is confident that a federal judge, well aware of their position of authority and the effect it may have on prospective jurors, will be capable of mitigating the risk of jurors telling the court what they believe it wants to hear. *See United States v. Golfo*, No. 19-CR-95 (KAM), 2020 WL 2513445, at *6 (E.D.N.Y. May 15, 2020) (concluding there is no reason why "*voir dire* conducted by a federal judge would not be just as likely, if not more likely, to yield honest answers from prospective jurors.").

Finally, even accepting Montanez's assertion that mass shootings and gun possession are "hot button issue[s]," the allegation here—possession of a single cartridge—is not especially likely to inflame the passions of prospective jurors on the issue of gun violence. Even if the charge *was* likely to inflame prospective jurors, Montanez has given no concrete reason why a federal judge, with years of experience navigating complex, sensitive matters, would be unable to ferret out any juror bias on that basis.

In light of the above considerations, and the court's belief that jurors will respond honestly to questions directed to them by a

33

federal judge, Montanez's request to permit attorney-conducted *voir dire* is DENIED.

### H.   Consequences Attendant to Conviction

Finally, the Government seeks to preclude Montanez from mentioning at trial any consequences attendant to conviction, including punishment. (Gov't Mot. at 11.) Montanez represents that he "does not seek to introduce such evidence." (Def. Opp. at 5.) As such, the court DENIES as moot the Government's motion to preclude Montanez from mentioning at trial any consequences attendant to conviction.

## IV.   CONCLUSION

Montanez's motion in limine is GRANTED in part and DENIED in part, and the Government's motion in limine is GRANTED in part and DENIED in part.

The court rules as follows:

- The Government may introduce evidence of Montanez's alleged purchase and receipt of the ghost gun parts pursuant to Federal Rule of Evidence 404(b)(2).

- Montanez is precluded from making any arguments at trial regarding the legality of the search or the adequacy of law enforcement's investigation.

- Montanez is precluded from introducing his post-arrest statements. The court defers judgment on the admissibility of Montanez's post-arrest statements as offered by the Government.

- The Government and its witnesses are precluded from referring to Montanez as a "felon" or "convicted felon" at trial, though the parties may adopt appropriate shorthand for the prior felony conviction element of Section 922(g)(1), including "convicted of a felony."

- The Government may not impeach Montanez with his prior manslaughter conviction. However, the court is prepared to admit proof of the fact of the conviction for purposes of establishing the prior felony conviction element of Section 922(g)(1).

- The court declines to preclude, as a discovery-related remedy, the identified evidence disclosed by the Government on or after September 24, 2024. Montanez remains free to request a continuance.

- The court will not permit attorney-conducted *voir dire*.

SO ORDERED.

Dated:    Brooklyn, New York
          October 24, 2024

                              _s/Nicholas G. Garaufis_
                              NICHOLAS G. GARAUFIS
                              United States District Judge