UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

                  MEMORANDUM & ORDER
                  23-CR-186 (NGG)

-against-

JOHN MONTANEZ,

            Defendant.
───────────────────────────────

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendant John Montanez's supplemental motion *in limine*. (Suppl. Mot. (Dkt. 42).) For the reasons that follow, Montanez's motion is GRANTED.

I. BACKGROUND

The court presumes the parties' familiarity with the underlying facts and procedural history of the case. On October 25, 2024, the court issued a memorandum and order granting in part and denying in part the parties' respective motions *in limine*. (Mem. and Order dated 10/25/2024 ("M&O") (Dkt. 41).) As relevant here, the court denied Montanez's motion to preclude the gun parts evidence, denied the Government's motion to admit the gun parts evidence as direct evidence of the crime charged, and granted the Government's motion to admit the gun parts evidence pursuant to Federal Rule of Evidence 404(b)(2). (*Id.* at 10.)

Currently before the court is Montanez's supplemental motion *in limine* requesting that the court "preclude the government and its witnesses from using the phrase 'ghost guns,' or otherwise describing the firearms parts . . . as untraceable or unserialized, during trial in this case." (Suppl. Mot. at 1.) The Government opposes this request. (Gov't Opp. (Dkt. 45).)

1

## II. LEGAL STANDARD

The purpose of motions *in limine* is "to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[1] "A court will exclude evidence on a motion in limine only if it is clearly inadmissible on all potential grounds." *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021). The Federal Rules of Evidence govern the admissibility of evidence at trial.

## III. DISCUSSION

Montanez seeks to preclude the government and its witnesses from using the phrase "ghost guns," or otherwise describing the gun parts as untraceable or unserialized, at trial. (Suppl. Mot. at 1.) He argues that the "alleged nature of the guns is wholly unnecessary to support the theory under which [the court] has admitted the evidence"—*i.e.*, to prove motive, knowledge, identity, intent, or absence of mistake. (*Id.*) At the same time, Montanez contends that these terms are unduly prejudicial because ghost guns "have been widely reported on in the media for their use by dangerous criminals." (*Id.*) Thus, because the phrase "ghost guns" and a description of the gun parts as "untraceable" or "unserialized" have "no probative value and would be unfairly prejudicial," Montanez requests that the court preclude their use at trial under Federal Rule of Evidence 403. (*Id.* at 2.)

The Government argues that the court should "reject the defendant's effort to force the government to avoid using the most common phrase to refer to unserialized firearms parts that, when

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

pieced together, create an operable firearm." (Gov't Opp. at 1.) The term "ghost gun," it argues, "does not somehow transform the word 'guns' into an unfairly prejudicial phrase; it merely describes (accurately) the type of 'guns' at issue." (*Id.*)

Federal Rule of Evidence 401 provides that evidence is relevant if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is presumptively admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or the Supreme Court provide otherwise. Fed. R. Evid. 402. However, Rule 403 permits exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (explaining that Rule 403 "requires an on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant"). The district court "has broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 537 (E.D.N.Y. 2011).

The term "unfair prejudice" speaks "to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Under Rule 403, the question is "not whether the evidence was suggestive of guilt—as all relevant evidence offered against the defendant would suggest guilt—but rather, whether it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008). This

adverse effect may consist of a "tendency of the evidence in question to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Id.* at 133.

In balancing the potential prejudice against the probative value of the evidence, the court is "informed by the availability of alternative means to present similar evidence." *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006). The Supreme Court has approved of the consideration of such "evidentiary alternatives," holding that "when Rule 403 confers discretion by providing that evidence 'may' be excluded, the discretionary judgment may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives." *Old Chief*, 519 U.S. at 184-85; *id.* at 185 (citing a treatise which notes that the "probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point").

The court first considers the probative value of the evidence. The court admitted the gun parts evidence pursuant to Rule 404(b)(2) for purposes of proving Montanez's motive, knowledge, identity, intent, or absence of mistake in allegedly possessing the cartridge that forms the basis of the sole possession charge. (M&O at 10.) The court denied the Government's request to admit the gun parts evidence as direct evidence of the crime charged. (*Id.*) Thus, the question is whether the fact that the gun parts were "ghost guns" (*i.e.*, untraceable or unserialized) "tend[s] to prove the fact or issue that justified [the gun parts'] admission into evidence." *Massino*, 546 F.3d at 132.

The Government does not explain how its use of the phrase "ghost guns" or its description of the gun parts as untraceable or unserialized is relevant to proving Montanez's motive, knowledge, identity, intent, or absence of mistake in allegedly possessing the cartridge. (*See* Gov't Opp.) Montanez, meanwhile,

4

persuasively argues that the nature of the gun parts is irrelevant to proving the theory under which the court admitted the evidence. (Suppl. Mot. at 1.) The court agrees with Montanez that the use of the phrase "ghost guns," or a description of the gun parts as untraceable or unserialized, has no "tend[ency] to prove the fact or issue that justified [the gun parts'] admission into evidence." *Massino*, 546 F.3d at 132. The fact that the gun parts were untraceable or unserialized makes it no more or less likely that Montanez had the motive, knowledge, identity, intent, or absence of mistake in possessing the cartridge. Moreover, there are readily available "alternative means to present [the same] evidence"—the Government may refer to the gun parts as "gun parts" or "guns" instead of using the phrase "ghost guns" or describing the gun parts as untraceable or unserialized. *Awadallah*, 436 F.3d at 132. Thus, the probative value of this evidence, if any, is minimal.

At the same time, use of the phrase "ghost guns," or a description of the gun parts as untraceable or unserialized, presents a substantial risk of prejudice to Montanez. As Montanez points out, ghost guns—and their connection to a "surge in gun crime[s]"—have been the subject of increased media coverage of late. Glenn Thrush, *'Ghost Guns' Case Before Supreme Court Has Major Implications for Industry in Flux*, N.Y. TIMES (Oct. 7, 2024), https://www.nytimes.com/2024/10/07/us/politics/supreme-court-ghost-guns.html; *Ghost Guns*, Sandy Hook Promise (last visited Oct. 29, 2024), https://actionfund.sandyhookpromise.org/what-is-a-ghost-gun-and-how-to-stop-them/
(noting that, in 2019, a high school student brought a ghost gun to school and used it to kill two of his classmates). In fact, on October 8, 2024, the Supreme Court heard oral argument in a widely reported case regarding whether "ghost gun" kits are subject to the 1968 Gun Control Act. *See, e.g.*, Nina Totenberg, *Can ghost guns be regulated as firearms? The Supreme Court will decide*, NPR (Oct. 8, 2024), https://www.npr.org/2024/10/08/nx-s1-

5106803/supreme-court-ghost-guns; Alison Durkee, *What Are 'Ghost Guns'? What To Know As Supreme Court Hears Case Today*, FORBES (Oct. 8, 2024), https://www.forbes.com/sites/alison-durkee/2024/10/08/what-are-ghost-guns-what-to-know-as-supreme-court-hears-case-today/.

The Government argues that "the adjective 'ghost' does not somehow transform the word 'guns' into an unfairly prejudicial phrase." (Gov't Opp. at 1.) The court disagrees. "Ghost guns" are distinct from "guns" in significant respects. As NPR recently summarized:

> They're called ghost guns because unlike guns bought from a licensed dealer, these build-it-yourself gun kits have no serial numbers stamped on the assembled firearm, so the guns can't be traced if found at a crime scene. And there are no background checks done on people who purchase the kits. The kits can be bought online without any background check, and without presenting identification. In fact, according to regulators, the kits can be bought anonymously with cryptocurrency, using a pre-paid debit card.

Totenberg, *supra*; *see also New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 316 (S.D.N.Y. 2024) (describing "ghost guns" as "homemade guns that lack serial numbers and are thus untraceable"). Although the gun parts evidence is already somewhat prejudicial to Montanez—as all relevant evidence offered against the defendant tends to suggest his guilt—describing the gun parts as "ghost guns" adds an additional layer of prejudice because it suggests a greater degree of criminality on the part of Montanez. Moreover, it bears repeating that Montanez does not face any charges in connection with his alleged purchase and receipt of the gun parts. This prosecution is not about ghost guns; it is about whether Montanez knowingly possessed the single cartridge discovered in his apartment. The fact that the gun parts

were unserialized or untraceable does not tend to prove Montanez's knowing possession of the cartridge, rather, it tends to prove "some adverse fact not properly in issue," and runs a substantial risk of "unfairly [exciting] emotions against the defendant." *Massino*, 546 F.3d at 133. For that reason, the court concludes that the minimal, if any, probative value of the evidence is substantially outweighed by a danger of unfair prejudice to Montanez. Although it remains free to present the gun parts evidence pursuant to Rule 404(b)(2), at trial, the Government and its witnesses must refrain from referring to the gun parts evidence as "ghost guns," or otherwise describing the gun parts as untraceable or unserialized.

## IV. CONCLUSION

For the foregoing reasons, Montanez's supplemental motion *in limine* is GRANTED. The Government and its witnesses must refrain from referring to the gun parts evidence as "ghost guns," or otherwise describing the gun parts as untraceable or unserialized, during trial in this case.

SO ORDERED.

Dated:   Brooklyn, New York
         October 29, 2024

                                              s/Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

7